IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **PRAIRIE RIVERS NETWORK,** | ) | |
| | ) | |
| Plaintiffs, | ) | No. 2-18-cv-02148 |
| | ) | |
| v. | ) | Hon. Judge Colin S. Bruce |
| | ) | |
| **DYNEGY MIDWEST GENERATION, LLC** | ) ) | |
| | ) | |
| Defendant. | ) | |

## REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

Defendant Dynegy Midwest Generation, LLC's ("Dynegy") Motion to Dismiss presents a straightforward argument: the Seventh Circuit has held that discharges to groundwater are not subject to the Clean Water Act ("CWA"). Plaintiff Prairie Rivers Network attempts to avoid dismissal of its Complaint, which is based on alleged discharges to groundwater, by misstating controlling precedent, invoking a wide body of inapplicable case law, and arguing that a CWA permit may somehow be enforced here based on alleged activities that are outside the CWA's jurisdiction. Dynegy's Reply explains that each of Plaintiff's attempts are in error.

I. *Oconomowoc* **Fundamentally Bars Plaintiff's Claims.**

Dynegy's Motion explains that dismissal is required because the allegations in both Counts of the Complaint exclusively concern discharges to groundwater allegedly hydrologically connected to navigable water. The Seventh Circuit has established that the CWA does not "assert[] authority over ground waters, just because these may be hydrologically connected with surface waters" and that claims based on such allegations should be dismissed. *Oconomowoc*, 24 F.3d at 965.[1] Plaintiff attempts to avoid that same outcome here by misstating the facts of *Oconomowoc*. Specifically, Plaintiff claims that "*Oconomowoc* . . . focused on the narrow question of whether the CWA governs discharges into groundwater itself, absent evidence that

---

[1] Among other errors, Plaintiff's Response wrongfully contends that "Dynegy does not dispute" key elements of its claim, including the assertion that the impoundments are "point sources." Plaintiff's Response in Opposition to Motion to Dismiss with Incorporated Memorandum of Law at 8-9 (ECF 19) ("Response"). That contention mistakes Dynegy's use of the proper standard of review at this stage for factual admissions. *See* Memorandum in Support of Defendant's Motion to Dismiss at 6-7 (ECF 15) ("Dynegy's Memo in Support"). In fact, if this case is not dismissed, Dynegy will contest key factual allegations in the Complaint. Nor does Dynegy concede that, as a matter of law, the impoundments are "point sources" based on the allegations in the Complaint. In this regard, the District Court of Massachusetts recently determined as a matter of law that groundwater flowing through a landfill is not a discharge from a point source. *Toxics Action Center, Inc., et al. v. Casella Waste Systems, Inc., et al.*, No. 4:17-cv-40089, slip op. at 10-12 (D. Mass. Sept., 30, 2018). A similar analysis should apply here.

1

the groundwater discretely conveyed pollution into navigable water." Response at 14 (emphasis omitted). To the contrary, *Oconomowoc* unmistakably involved discharges to groundwater alleged to be hydrologically connected to navigable water.

That Plaintiff's "hydrological connection" theory was specifically argued to, and rejected by, the district court and the Seventh Circuit in *Oconomowoc* is demonstrated by both the text of the district court decision and the underlying district court and Seventh Circuit pleadings, all of which Plaintiff ignores.[2] For example, the *Oconomowoc* complaint is predicated upon allegations that contaminants would "migrate out of the pond, into the groundwater . . . and will be . . . discharged into nearby wetlands and surface waters that are waters of the United States." *Oconomowoc*, Compl. ¶ 50 (Jul. 30, 1993), attached as **Exhibit 1** to Decl. of Daniel J. Deeb. The district court in *Oconomowoc* was compelled to accept those allegations as true at the motion to dismiss stage, but it still found that the CWA did not apply. 1993 WL 668975, at *3; *see Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984) (describing the applicable standard of review).[3]

The hydrological connection theory argument was also squarely presented to the Seventh Circuit. Indeed, plaintiff-appellant's Statement of Issues plainly stated: "Is the intentional discharge of pollutants into a shallow groundwater aquifer which is hydrologically connected to nearby navigable waters of the United States subject to regulation under the Clean Water Act?"

---

[2] *See* Dynegy's Memo in Support at 8 (discussing the *Oconomowoc* district court decision, No. 93-0707, 1993 WL 668975, at *3 (E.D. Wis. Sept. 24, 1993), *aff'd* 24 F.3d 962 (7th Cir. 1994)).
[3] As it does with *Oconomowoc*, Plaintiff argues that the Western District of Michigan's decision in *Kelley v. United States* is "inapposite" because it does not "discuss[] any evidence . . . that the groundwater . . . was . . . conveying pollution to surface waters." Response at 14 n.11. Again, Plaintiff disregards the relevant standard. Because *Kelley* was decided on a motion to dismiss, the court was obligated to accept the plaintiff's allegation that contaminated groundwater was "migrating downgradient . . . and eventually discharging into [Lake Michigan]." 618 F. Supp. 1103, 1105 (W.D. Mich. 1985).

*Oconomowoc*, Plaintiff-Appellant's Brief at 3 (Nov. 15, 1993), attached as **Exhibit 2** to Decl. of Daniel J. Deeb; *see id.* at 30-37 (emphasizing the complaint's allegations of discharge of pollutants to CWA-regulated wetlands). Thus, the Seventh Circuit clearly rejected this theory when it upheld the suit's dismissal. 24 F.3d at 965. In sum, Plaintiff's statement that the Seventh Circuit did not consider the "hydrological connection" theory is simply wrong. It did and rejected it.[4]

## II.  Plaintiff Presents No Basis for the Court to Ignore *Oconomowoc*.

Shrugging off this binding Seventh Circuit precedent, Plaintiff instead asks the Court to look to purported "volumes of authority" from other circuits that it says support its hydrological connection theory. Response at 14. First, even assuming Plaintiff's characterization is correct, *Oconomowoc* is still controlling.[5] Second, those "volumes" do not, in fact, show what Plaintiff claims. Instead, in just the past month, two additional cases have been decided that specifically *reject* Plaintiff's theory. In *Ky. Waterways Alliance*, the Sixth Circuit, addressing discharges to groundwater from CCR impoundments, held that "[t]he CWA's text . . . forecloses the hydrological connection theory." No. 18-5115, slip op. at 11 (6th Cir. Sept. 24, 2018).[6] That

---

[4] Plaintiff also curiously relies upon *Inland Steel Co. v. EPA*, 901 F.2d 1419 (7th Cir. 1990), a decision decided four years *before Oconomowoc*. *Cf.* Response at 15. In fact, *Oconomowoc* noted that it answered a question that *Inland Steel* had reserved. 24 F.3d 965.
[5] *See Hart v. Wal-Mart Stores, Inc. Assocs.' Health & Welfare Plan*, 360 F.3d 674, 680 (7th Cir. 2004) ("[I]t would generally be an abuse of discretion for a district court to follow out-of-circuit precedent which conflicts with binding precedent from its own circuit.").
[6] Plaintiff acknowledges the *Ky. Waterways Alliance* decision in its Response, but argues that it was wrongly decided. Response at 11 n.9. A recent decision from the Fourth Circuit also undercuts much of Plaintiff's Response by holding that discharges to groundwater from CCR impoundments (similar to those at issue in this case) do not constitute point source discharges. *Sierra Club v. Virginia Electric Co.*, No. 17-1895, slip op. at 15 (4th Cir. Sept. 12, 2018) ("[D]iffuse seepage [from the impoundments] . . . was a generalized, site-wide condition that allowed rainwater to distribute . . . [contaminants] widely into . . . groundwater. . . . Thus, the . . . [impoundments] could not be characterized as discrete 'points,' nor did they function as conveyances."). This holding, and the Sixth Circuit's statement in *Ky. Waterways Alliance* that

3

theory, it held, is also inconsistent with Congress's intent in enacting the CWA – to only regulate certain types of discharges. *Id.* at *15; *see also Tenn. Clean Water Net. v. TVA*, No. 17-6155, slip op. at 9 (6th Cir. Sept. 24, 2018).

These decisions, together with the Fifth Circuit and district court decisions cited in Dynegy's Memo in Support, show that *Oconomowoc*'s rejection of the hydrological connection theory is far from an outlier. *See* Dynegy's Memo in Support at 9-10. Regardless, *Oconomowoc*, not decisions from other circuits, is controlling and should be applied here.

**III.    Like Count 1, Plaintiff's Count 2 Fails.**

In an attempt to save its Count 2, Plaintiff asserts that its CWA citizen suit can somehow proceed in the absence of a discharge regulated under the CWA. It cannot.[7] Count 2 alleges that discharges of pollutants to groundwater (the same alleged discharges that underlie Count 1) violate certain standard conditions of the Vermilion Power Station's National Pollutant Discharge Elimination System permit (the "Permit"). Specifically, Count 2 asserts that such groundwater discharges are violating 33 U.S.C. § 1311(a) ("Section 1311(a)"). Compl. ¶ 74 ("Dynegy has violated and is continuing to violate the CWA, 33 U.S.C. § 1311(a)."). Plaintiff's Response reiterates that the basis for Count 2 is an alleged violation of Section 1311(a). Response at 18 ("Plaintiff has asserted a viable claim that Dynegy's unauthorized discharges violate 33 U.S.C. § 1311(a) because the discharges violate the conditions of the Permit.").

---

it will likely follow the Fourth Circuit's reasoning on that point, call into question much of the other prior Fourth Circuit and Sixth Circuit case law cited in Plaintiff's Response. *Ky Waterways Alliance*, slip op. at 12 n.8 ("[Plaintiffs] contend that the coal ash ponds are point sources. We doubt the correctness of that position.").

[7] While the specific Permit conditions Plaintiff alleges have been violated derive from Illinois regulations implementing the CWA (s*ee* Compl. ¶¶ 67 – 73), Count 2 of the Complaint (like Count 1) is wholly premised on CWA jurisdiction. *Id.* ¶ 74.

But a violation of Section 1311(a) requires a discharge to navigable waters: "Except as in compliance with this section and sections 1312, 1316, 1317, 1328, 1342, and 1344 of this title, the *discharge of any pollutant* by any person shall be unlawful." 33 U.S.C. § 1311(a) (emphasis added). In other words, as relevant to this case, "the discharge of any pollutant" is unlawful, unless it is in compliance with the Permit (which was issued pursuant to 33 U.S.C. § 1342). Therefore, in order to establish liability under Section 1311(a), as Plaintiff seeks to do in Count 2, Plaintiff must show that the conditions it alleges in Count 2 *both (A)* constitute "the discharge of any pollutant," and *(B)* are not "in compliance" with the Permit.

Plaintiff has failed to meet condition *(A)* because, as in Count 1, *Oconomowoc* establishes that discharges to groundwater do not constitute "the discharge of any pollutant," under the CWA. Under the CWA, the term "the discharge of any pollutant" means (in relevant part) "addition of any pollutant to navigable waters from any point source." 33 U.S.C. § 1362(12); *Oconomowoc*, 24 F.3d at 963 (7th Cir. 1994). As described in Dynegy's Memo in Support and in Part I above, discharges to groundwater, *even groundwater hydrologically connected to navigable waters*, do not constitute "the discharge of any pollutant" under the CWA. Therefore, the discharges Plaintiff has alleged are not actionable under Section 1311(a), even if those alleged discharges are not "in compliance" with the Permit, as Plaintiff alleges. If they are actionable, it is in the Illinois state regulatory system, as there is no CWA jurisdiction here. For that reason, Count 2 – like Count 1 – should be dismissed.

## IV. Conclusion

For the reasons stated here and in Dynegy's Memo in Support, Dynegy's Motion to Dismiss should be granted and Plaintiff's Complaint stricken from this Court's docket with prejudice.

5

Dated: October 5, 2018.

Respectfully submitted,

/s/     *Daniel J. Deeb*
Daniel J. Deeb
Joshua R. More
J. Michael Showalter
Ryan C. Granholm
Schiff Hardin LLP
ddeeb@schiffhardin.com
(312) 258-5500
233 South Wacker Drive, Ste. 7100
Chicago, IL 60606

P. Stephen Gidiere III
Balch & Bingham LLP
sgidiere@balch.com
(205) 251-8100
1901 6th Avenue North, Suite 1500
Birmingham, AL 35203

Michael L. Raiff
Gibson, Dunn & Crutcher LLP
mraiff@gibsondunn.com
(214) 698-3100
2100 McKinney Avenue, Suite 1100
Dallas, Texas 75201

*Attorneys for Defendant Dynegy Midwest Generation, LLC*

6

**CERTIFICATE OF SERVICE**

I hereby certify that on October 5, 2018, I electronically filed the foregoing **Reply in Support of Dynegy's Motion to Dismiss,** with the Court's CM/ECF system, which caused an electronic copy of this filing to be served on counsel for Plaintiff Prairie Rivers Network.

/s/     *Daniel J. Deeb*
Schiff Hardin LLP
233 South Wacker Drive, Suite 7100
Chicago, IL 60606

*Attorneys for Defendant Dynegy Midwest Generation, LLC*